Paras B. Barnett, Esq.
Nevada Bar #: 7986
BARNETT CSOKA
3883 Howard Hughes Parkway, Suite 790
Las Vegas, Nevada 89169
Tel: (702) 487-7422
Fax: (800) 634-0607
Email: pbb@barnettcsoka.com
*Attorneys for Defendant, Tiiu Elizarde*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MYRA LEAVITT, as Administrator of THE ESTATE OF BARBARA J. KERR, and KENNETH FRIEDMAN, an individual, | CASE NO.: 2:14-CV-01043-JAD-NJK |
| Plaintiff, | **MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| TIIU ELIZARDE, an individual, ROES I through X, | |
| Defendant. | |

COMES NOW Defendant, Tiiu Elizarde ("Elizarde"), by and through her counsel, Paras B. Barnett, Esq. of the law firm BARNETT CSOKA, and hereby files her MOTION FOR SUMMARY JUDGMENT (this "Motion").

This Motion is based upon FRCP 56(c), the attached Memorandum of Points and Authorities, the Declaration of Tiiu Elizarde (the "Elizarde Declaration"), a true and correct copy of which is attached hereto as Exhibit "G," documents on file with the Court, judicial notice of which is hereby respectfully requested, and any oral arguments that may be entertained by the Court.

///

Dated this 4th day of May, 2015.

BARNETT CSOKA

BY: s/ Paras B. Barnett, Esq
PARAS B. BARNETT, ESQ
Nevada Bar No. 007986
3883 Howard Hughes Parkway., Suite 790
Las Vegas, Nevada 89169
Tel: (702) 487-7422
Fax: (800) 634-0607
Email: pbb@barnettcsoka.com
*Attorneys for Defendant, Tiiu Elizarde*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The gravamen of Plaintiffs' Complaint is that Elizarde is not entitled to her half of the proceeds from a payable-on-death account in which she was a co-beneficiary upon the death of the owner of the account. Elizarde maintains that Plaintiffs' interpretation flies in the face of NRS 111.797.

In particular, pursuant to NRS 111.797, any alleged changes to a decedent's will (oral, holographic, or otherwise) cannot alter the "right of survivorship" in such payable-on-death account or alter the payable on death designation. Because Elizarde obtained her half of the money from the account at issue in accordance with NRS 111.797, Plaintiffs should not be allowed to try to invent various causes of action based on Decedent's alleged subsequent will or wills (oral, holographic, or otherwise).

Accordingly, the Court should grant summary judgment to Defendant Elizarde.

///

///

II. STAMENT OF NON-DISPUTED FACTS

    A. **Following Decedent's passing, Plaintiffs have found themselves in difficult circumstances and facing financial issues, with the Probate Court even pointing out Plaintiff Leavitt's improper activities with regard to the property of the Estate.**

Plaintiffs here are also parties to a related probate proceeding, which has been filed in the Eight Judicial District Court, Clark County, Nevada, and is styled as "In the Matter of the Estate of BARBARA J. KERR," and has been assigned the case number P-13-077706 (the "Kerr Probate Matter"). *See* Elizarde Declaration at ¶ 5 (Exhibit "A" thereto; Page 2 therein).

In that Kerr Probate Matter, the Probate Court, in relevant portion, entered the following Findings of Fact and Conclusions of Law with regard to Plaintiffs herein:

> . . . Barbara J. Kerr ("Decedent") died on or about May 15, 2013 in Las Vegas Nevada. On June 5, 2013, . . . [the Probate] Court issued an Order appointing John J. Cahill, Clark County Public Administrator as Special Administrator of the Estate . . . [the "Estate")] and giving him instructions related to Decedent's burial as a dispute arose between the Decedent's family . . . . [Then,] [o]n August 5, 2013, . . . [the Probate] Court issued an Order appointing Myra Leavitt . . . [("Plaintiff Leavitt")] and Yehoshua Harlig as Co-Administrators of the Estate . . . .[1] **The primary beneficiary of the estate, Kenneth A Friedman ("[Plaintiff] Friedman"), is currently incarcerated at High Desert State Prison in Indian Springs, Nevada** . . . . Perhaps the most extraordinary item handled by the Special Administrator and his counsel [prior to the appointment of Plaintiff Leavitt] was the burial of the Decedent. **[Plaintiff] Friedman directed the Special Administrator and his counsel to take extensive action to have his mother buried as his two siblings were unwilling to pay for the cost of the burial** . . . .
>
> [In the meantime, as the Special Administrator's documentation evidences, **Plaintiff Leavitt]** <u>unilaterally gained access</u> **to the Decedent's real property at 2350 E. Hacienda Avenue, Las Vegas, NV along with the personal property in the residence and the decedent's vehicles.**
>
> [Lastly] the fees of the Special Administrator are reasonable and . . . [therefore] should be paid in full . . . [by the Administrators, including Plaintiff Leavitt].

---

[1] On May 23, 2013, the attorney for the Estate, Kristin M. Tyler, Esq., presented a "consent and declination form" to Elizarde so that she would not have to serve as an administrator of the Estate. *See Elizarde Declaration* at ¶ 7 (Exhibit "C" thereto).

- 3 -

*Id.* at ¶ 6 (Exhibit "B" thereto; Pages 1-5 of the Commissioner's Report and Recommendation therein) (emphasis added; internal numbering omitted).

**B.    In stating that half of the money in the POD Account was Elizarde's, prior legal counsel for the Estate even instructed Elizarde to withdraw her half of the money from the POD Account.**

On June 18, 2013, the attorney for the Estate, sent correspondence to Elizarde which stated as follows:

> I am sending this message at the request of . . . [Plaintiff] Friedman . . . , [who] is the son of your deceased friend, Barbara J, Kerr. Ken asked me to contact you regarding . . . [the Decedent's] money at Nevada State Bank. She listed two beneficiaries to receive the account: you and Ken. **I have given Ken instructions on how to get his half of the money. He is hoping that you can act quickly to get your half of the money and consider using it to pay for Barbara's burial**.

*Id.* at ¶ 8 (Exhibit "D" thereto) (emphasis added).

Thereafter, the attorney for the Estate, the same Estate on whose behalf Plaintiff Leavitt now sues Elizarde, gave specific instructions to Elizarde in writing on how to obtain Elizarde's half of the money from Decedent's Payable-on-Death Account at Nevada State Bank (the "POD Account"). *See id.*

**C.    Elizarde's Request for her half of the money from the Decedent's POD Account also met the Bank's rigorous requirements with regard to releasing funds from such accounts.**

On June 21, 2013, consistent with the specific instructions from the attorney for the Estate, Elizarde requested her half of the money from the Decedent's POD Account at Nevada State Bank (the "Bank"). *See id.* at ¶ 9 (Exhibit "E" thereto). On July 9, 2013, the Bank issued a cashier's check to Elizarde in the amount of $ 138,198.73, representing half of the money in the POD Account. *See id.* at ¶ 10 (Exhibit "F" thereto).

Notwithstanding, Plaintiffs have alleged that, pursuant to a holographic Last Will and Testament, dated August 7, 2012, the $ 138,198.73 that Elizarde has withdrawn from the POD Account belongs solely to the Estate and/or Friedman and not to Elizarde. *See* Complaint at

Docket 1, Pages 3 and 4 therein.

### III. ARGUMENT

#### A. Motion for Summary Judgment –Legal Standard.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FRCP 56(c). The purpose of summary judgment procedure is *to avoid unnecessary trials* when they would serve useful purpose, because the material facts of the case are not in dispute. *See, e.g., Short v. Hotel Riviera, Inc.,* 79 Nev. 94, 378 P.2d 979 (1963); *see also Maes v. Henderson,* 33 F. Supp. 2d 1281 (D. Nev. 1993).

Furthermore, the mere existence of issues of fact does not necessarily preclude summary judgment. *See, e.g., Rebel Oil Co. v. At. Richfield Co.,* 51 F.3d 1421 (9th Cir. 1995); *see also Ohio v. Wilson,* 112 Nev. 38, 910 P.2d 276 (1996). Instead, only "genuine disputes" over outcome determinative facts will preclude summary judgment. *See, e.g., Grutzmacher v. County of Clark,* 33 F. Supp. 2d 896 (D. Nev. 1999).

As such, the non-moving party is not entitled to build a case **on the gossamer threads of whimsy, speculation, and conjecture.** *See Collins v. Union Fed. Sav. & Loan,* 99 Nev. 284, 302, 662 P.2d 610, 621 (1983) (emphasis added); *see also Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975). Instead, the opposing party must come forward with "specific facts" showing that there is a genuine issue for trial. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Here, as will be explained in detail further below, all of Plaintiffs' claims fail as a matter of law. This is because, pursuant to NRS 111.797, any alleged changes to the Decedent's will (oral, holographic, or otherwise) cannot alter the "right of survivorship" in the POD Account and may not alter the payable on death designation.

Accordingly, the Court should grant summary judgment to Defendant Elizarde.

**B.   Plaintiff's Claims are barred by NRS 111.797.**

The modern trend, which Nevada also specifically follows since 2011 by statute, is to sanction a large number of property transfers to third-party beneficiaries entirely outside of the probate context. *See, e.g.,* NRS Chapter 111. In particular, in relevant portion, NRS 111.797 provides that:

> A right of survivorship arising from the express terms of the account, . . . [multi-party accounts,] or **[a payable on death] designation may not be altered by a will.**

*Id.* (emphasis added); *see also* NRS 111.729 (defining payable on death designation); NRS 111.795 (defining the relative characteristics of multi-party accounts).

Even before 2011, however, Nevada Supreme Court specifically sanctioned such payable on death accounts or "Totten trusts," as they were referred to under the common law, as specifically sanctioning transfers to beneficiaries entirely outside of the probate context. *See, e.g., Byrd v. Lanahan,* 105 Nev. 707 (1989) (holding that a savings account payable upon death to third-party beneficiary was valid as a Totten trust"); *see generally In re Totten,* 179 N.Y. 112, 71 N.E. 748 (1904) (recognizing payable on death accounts as trusts, not subject to probate requirements, for the first time); *Punts v. Wilson,* 137 S.W.3d 889 (Tex. App. 2004) (holding that payee on payable-on-death account, who was also named executor, *did not breach any fiduciary duty* to the residuary beneficiary by taking possession of the payable-on-death funds rather them treating them as part of the estate) (subsequently, distinguished on different grounds).

Here, the alleged holographic will came into existence in 2012. Accordingly, it would be subject to NRS 111.797 and would not alter the payable on death account. Because Elizarde obtained her half of the money in accordance with NRS 111.797, Plaintiffs should not be allowed to invent various causes of action based on Decedent's alleged final wishes -i.e., will or wills.

- 6 -

Accordingly, the Court should grant summary judgment to Defendant Elizarde.

### C. All of Plaintiffs' Claims Must Fail.

#### 1. Plaintiff's First Claim for Relief for Unjust Enrichment Must Fail.

An action based on the theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement. *See Leasepartners Corp. v. Robert L. Brooks Trust*, 113 Nev. 747, 942 P.2d 182 (1997).

Here, the terms of the POD Account provide the express terms of the contract –a contract which the Bank, as trustee, administered by releasing half of the funds therein to Elizarde as co-beneficiary. Pursuant to NRS 111.797, regardless of what the Decedent may have allegedly communicated thereafter by a subsequent will or wills (holographic or otherwise), none of that may alter the designation of Elizarde in said account. Most importantly, given the presence of such an agreement in the form of the POD Account and the designations therein, Plaintiffs' unjust enrichment claim is entirely improper.

Accordingly, Plaintiff's first Claim for Relief must fail.

#### 2. Plaintiff's Second Claim for Relief for Breach of Fiduciary Duty Must Also Fail.

A payee on payable-on-death account, who was also named executor, *did not breach any fiduciary duty to the residuary beneficiary* by taking possession of the payable-on-death funds rather them treating them as part of the estate. *See Punts, supra.*

Here, at the outset, Elizarde quickly resigned as executor of the Estate. Regardless, under *Punts*, even Elizarde's status as a named executor does not result in any breach of any fiduciary duties for taking possession of the funds from the POD Account rather them treating them as part of the Estate. If *arguendo* it did, it would also be in contravention of the language and the policies

set forth in NRS 111.797.

Accordingly, Plaintiff's second Claim for Relief must also fail.

3. **Plaintiff's Third Claim for Relief for Civil Theft and False Pretenses Pursuant to NRS 205.0832 Must Also Fail.**

There is no private right of action under a criminal statute, unless it is specifically provided therein. As the United States Supreme Court explained:

> We have been quite reluctant to infer a private right of action from a criminal prohibition alone; . . . for example, we refused to infer a private right of action from "a bare criminal statute." And we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions . . . . [Instead, **the] [q]uestion of the existence of a statutory cause of action is, of course, one of statutory construction** . . . .

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190, 114 S.Ct. 1439, 1455 (1994) (internal quotation marks and citations omitted) (emphasis added).

Here, NRS 205.0832 is a criminal statute. Indeed, in Nevada, as the reported cases show, only a Nevada prosecutor would take action against the crime of theft under that statute. *See, e.g., State v. Hancock*, 114 Nev. 161, 955 P.2d 183 (1998).

Further, under NRS Chapter 205, only a discreet set of <u>criminal convictions</u> contemplate civil liability in the first place and a conviction under NRS 205.0832 is not one of them. In particular, in relevant portion, NRS 205.980 provides that:

> **A person <u>who is convicted</u> of violating any provision of NRS 205.060 or 205.2175 to 205.2707, inclusive, is civilly liable** for the value of any property stolen and not recovered in its original condition. The value of the property must be determined by its retail value or fair market value at the time the crime was committed, whichever is greater.

*Id.* (emphasis added).

Clearly, NRS 205.0832 does not fall within such provisions, accordingly not only there is no private enforcement of such provision, NRS Chapter 205 does not even allow for a civil penalty in connection with the same in the first place.

- 8 -

Accordingly, Plaintiffs' third Claim for Relief must also fail.

### 4. Plaintiff's Fourth Claim for Relief for Embezzlement Pursuant to NRS 205.300 Must Also Fail.

There is no private right of action under a criminal statute, unless the statute so provides. *See Central Bank of Denver, N.A.; supra.*

Here, NRS 205.300 is a criminal statute. Indeed, in Nevada, as the reported cases also show, only a Nevada prosecutor would take action against the crime of embezzlement under that statute. *See, e.g., Batin v. State,* 118 Nev. 61, 38 P.3d 880 (2002). Further, under NRS Chapter 205, only a discreet set of criminal convictions contemplate civil liability in the first place and a conviction under NRS 205.300 is clearly not one of them. *See* Discussion in Section III.C.3. *supra.*

Accordingly, for the same reasons as Plaintiffs' third Claim for Relief, Plaintiff's fourth Claim for Relief must also fail.

### 5. Plaintiff's Fifth Claim for Relief for Equitable Lien/Constructive Trust Must Also Fail.

The purpose of an equitable "constructive trust" is to redress situations involving "unjust enrichment." *See Bemis v. Estate of Bemis,* 967 P.2d 437, 114 Nev. 1021 (1998). However, an action based on the theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement. *See Leasepartners Corp., supra.*

Here, the terms of the POD Account provide the express terms of the contract –a contract which the Bank, as trustee, administered by releasing half of the funds therein to Elizarde as co-beneficiary. Pursuant to NRS 111.797, regardless of what the Decedent may have allegedly communicated thereafter by a subsequent will or wills (holographic or otherwise), none of that may alter the designation of Elizarde in said account. Most importantly, given the presence of

such an agreement in the form of the POD Account and the designations therein, Plaintiffs' unjust enrichment claim is entirely improper.

Accordingly, for the same reasons as Plaintiffs' first Claim for Relief, Plaintiff's fifth Claim for Relief must fail.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant Defendant's Motion for Summary Judgment on all of Plaintiff's Claims.

Dated this 4th day of May, 2015.

BARNETT CSOKA

BY: s/ Paras B. Barnett, Esq.
PARAS B. BARNETT, ESQ
Nevada Bar No. 007986
3883 Howard Hughes Parkway., Suite 790
Las Vegas, Nevada 89169
Tel: (702) 487-7422
Fax: (800) 634-0607
Email: pbb@barnettcsoka.com
*Attorneys for Defendant, Tiiu Elizarde*

## CERTTIFICATE OF SERVICE

I hereby certify that on May 4, 2015, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System, which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECL registrants.

Robert C. Graham, Esq.
LAWYERSWEST, LTD
10000 West Charleston Blvd.
Howard Hughes Plaza #140
Las Vegas, Nevada 89135
rgraham@lawyerswest.com
*Attorneys for Plaintiff, Myra Leavitt, as Administrator of the Estate of Barbara J. Kerr, and Kenneth Friedman*

/s/ Paras B. Barnett, Esq.