UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Myra Leavitt, as Administrator of The Estate of Barbara J. Kerr, and Kenneth Friedman<br><br>Plaintiffs<br><br>v.<br><br>Tiiu Elizarde,<br><br>　　　Defendant | 2:14-cv-01043-JAD-NJK<br><br>**Order Granting Motion to Strike, Denying Motion to Strike, and Granting Motion for Summary Judgment**<br><br>[ECF 22, 31, 39] |

　　　At the time of her death in May 2013, Barbara Kerr had a payable-on-death (POD) account that named two beneficiaries: defendant Tiiu Elizarde—a close friend of Kerr's—and plaintiff Kenneth Friedman—Kerr's son.[1]  After Kerr's death, the bank paid out half of the value of the account to each named beneficiary.[2]  Friedman and Myra Leavitt, as the Executrix of Kerr's estate, sue Elizarde for a handful of state-law claims, seeking to recoup the half paid to Elizarde.  Elizarde moves for summary judgment, arguing that plaintiffs' claims are meritless because, as a named co-beneficiary of the POD account at the time of Kerr's death, Elizarde was entitled to half of the funds under Nevada's laws governing POD accounts.[3]  I agree, grant Elizarde's motion, enter judgment in her favor on all of plaintiffs' claims, and close this case.[4]

**Background**[5]

　　　Barbara J. Kerr died on May 15, 2013.[6]  At the time of Kerr's death, her son Kenneth Friedman was imprisoned at Nevada's High Desert State Prison where he continues to serve a life

---

[1] ECF 1 at ¶ 17.

[2] *Id.* at ¶¶ 20–21.

[3] ECF 22 at 1.

[4] I find this motion suitable for disposition without oral argument.  Nev. L.R. 78-2.

[5] These facts are given for background purposes only and should not be construed as findings of fact.

[6] ECF 1 at ¶ 7.

sentence.[7]  Plaintiffs allege that on August 7, 2012, Kerr executed a holographic will that designated Friedman as the sole heir of her estate and appointed Elizarde as administrator.[8]  The will instructed that all assets were to be distributed "with wisdom and mutual agreement between [Elizarde] and [Friedman]" and provided that Elizarde would be paid $100 per month for her services.[9]

Kerr was also the primary owner of a POD bank account at Nevada State Bank that named Elizarde and Friedman as co-beneficiaries.[10]  In late March 2013, Elizarde drove Kerr to visit Friedman in prison.[11]  Friedman claims that Kerr made it clear during this visit that Elizarde was named as a co-beneficiary on the bank account only as a "convenience" to assist Friedman and pay for Kerr's funeral expenses.[12]

Plaintiffs contend that, shortly after Kerr's death, in late May 2013, Elizarde refused to act as administrator of the estate and denied the existence of any bank accounts.[13]  In June and July 2013, the bank distributed the proceeds from the POD account—approximately $138,000 each—to Elizarde and Friedman.[14]  Elizarde then allegedly used her share of the funds to pay off her mortgage on a property located in Palmer, Alaska.[15]

Plaintiffs sue Elizarde for (1) unjust enrichment, (2) breach of fiduciary duty, (3) civil theft/ false pretenses, (4) embezzlement, and (5) "declaration of an equitable lien and constructive trust."[16]

---

[7] *Id.* at ¶ 8.

[8] *Id.* at ¶¶ 9–11.

[9] *Id.* at ¶¶ 13–16

[10] *Id.* at ¶ 17.

[11] ECF 26-1 at ¶ 13.

[12] *Id.* at ¶ 17.

[13] ECF 1 at ¶ 19.

[14] *Id.* at ¶¶ 20–21.

[15] *Id.* at ¶ 22.

[16] This is a prayer for relief not, not a separate cause of action.

Plaintiffs allege that Elizarde induced Kerr to name her as a beneficiary on the account by promising to assist Friedman access the funds.[17]  Thus, plaintiffs contend, Elizarde was not entitled to half of the funds from the account, and she breached her fiduciary duty and was unjustly enriched when she claimed half of the account proceeds and used them to pay off her mortgage.  Plaintiffs seek to recover damages in excess of $138,198.43—the amount Elizarde received from the account—and request an equitable lien and constructive trust on Elizarde's Alaska home.

I.      Motions to Strike [ECF 31, 39]

More than three months after responses were due and almost two months after Elizarde filed her reply in support of her motion for summary judgment, plaintiffs filed a "Second Supplement to Response to Motion for Summary Judgment."[18]  Elizarde argues that this filing should be stricken because it is a surreply filed without leave of court violating local rule 7-2.[19]  Alternatively, Elizarde requests leave to file a response to the filing.[20]

Local Rule 7-2 authorizes the filing of a motion, opposition, and reply only.  "Courts in this district routinely interpret Local Rule 7-2 to allow surreplies only by leave of court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond."[21]  Plaintiffs argue that Elizarde raised substantially new arguments in her reply and thus "opened the door for [p]laintiffs to respond and counter."[22]  Plaintiffs do not object to Elizarde's request for leave

---

[17] *Id.* at ¶ 18.

[18] ECF 31.

[19] *Id.* at 3.  Elizarde also argues that the filing should be stricken because, taken with plaintiffs' opposition (10 pages) and first supplement (18 pages), the 17-page second supplement exceeds local rule 7-4's 30-page limit for briefs.

[20] *Id.* at 5–6.

[21] *FNBN-RESCON I, LLC v. Ritter*, No. 2:11-cv-1867 2014 WL 979930, at * 6 (D. Nev. March 12, 2014) (internal citations and quotations omitted).

[22] ECF 32 at 5.

to file a response.[23]

Plaintiffs never sought leave to file their surreply. Even if they had, the only new argument raised in Elizarde's reply that I have found is her (meritless) argument that plaintiffs' claims are barred by collateral estoppel.[24] Though plaintiffs identify this argument as their justification for filing the second supplement,[25] they never mention it, let alone respond to it; the bulk of the second supplement is devoted to responding to Elizarde's evidentiary objections to plaintiffs' exhibits and attempting to bolster their Nevada statutory arguments. Accordingly, I grant Elizarde's motion and strike plaintiffs' second supplement and accompanying exhibits[26] and do not consider them when ruling on Elizarde's motion for summary judgment.

Elizarde's second motion to strike,[27] which seeks to strike a handful of filings, is denied as moot. Plaintiffs' motion to facilitate communication, motion for joinder, and motion for hearing have already been denied.[28] Magistrate Judge Koppe has already stricken plaintiffs' "notice of apparent fraud."[29] And, because I grant Elizarde's first motion to strike, her request to strike plaintiffs' response to that motion is now moot.[30]

---

[23] *Id.* at 5–6.

[24] ECF 27 at 10 (citing *Daly v. Royal Ins. Co. of Am.*, 2002 WL 1768887 (D. Ariz. July 17, 2002)). Elizarde essentially argues that, because an attorney for the estate previously acknowledged Elizarde's right to half of the funds in the account, the estate is collaterally estopped from challenging her right to those funds. Because Elizarde offers no evidence that plaintiffs' claims, or any issues necessary to their resolution, have been fully determined by a court in a prior proceeding, the doctrine of collateral estoppel is inapplicable.

[25] Plaintiffs also contend that Elizarde raised a new "standing" argument in her reply. While framed slightly differently, Elizarde raised this argument in her response. *Compare* ECF 22 at 8–9 *with* ECF 27 at 10.

[26] ECF 31.

[27] ECF 39.

[28] ECF 41.

[29] *See* ECF 44 (striking ECF 36).

[30] ECF 34.

II.     Motion for Summary Judgment

    A.     Summary-Judgment Standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[31]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[32]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[33]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[34]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[35]  The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[36]

For purposes of ruling on the motion for summary judgment, I decline to consider the parties' unauthenticated exhibits.  I consider Elizarde's exhibits in their entirety, because they are either self-

---

[31] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[32] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[33] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[34] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[35] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[36] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

authenticating[37] or properly authenticated by affidavit.[38]  As for the exhibits attached to plaintiffs' opposition, I consider Friedman's affidavit [39] and the certificate of death,[40] but I consider none of the other attached exhibits because they are not properly authenticated.[41]  Finally, for the exhibits attached to the first supplement, I consider only the affidavits of Friedman,[42] Leavitt,[43] and Lila Waier[44] and Elizarde's letter to the bank;[45] none of the other exhibits are properly authenticated,[46] and I exercise my discretion not to consider them.

### B.     NRS 111.797 and Payable-on-Death Accounts

Friedman moves for summary judgment, arguing that plaintiffs' claims are barred by NRS 111.797, which provides that a POD designation may not be altered by a will.  Plaintiffs respond that summary judgment is inappropriate because whether Elizarde was an intended beneficiary of the

---

[37] ECF 22-1,2 (state-court orders).

[38] See ECF 22-7 authenticating ECF 22-3,4 (letters from the estate's previous counsel addressed to Elizarde); ECF 22-5 (notarized correspondence with bank); ECF 22-6 (photo copy of cashier's check).

[39] ECF 24-1 at 1–5.  I note that some of these statements are hearsay not within any exception and I disregard these portions.

[40] *Id.* at 12.

[41] ECF 24-1 at 7 (copy of holographic will), 9–10, 14–17 (letters).

[42] *Id.* at 16-1 at 2–4.  I consider these exhibits with the caveat that some of the statements they contain are hearsay not within any exception.

[43] *Id.* at 24–25.

[44] *Id.* at 27–31.

[45] *Id.* at 52.

[46] *Id.* at 6–19 (letter and enclosures), 21–22 (copy of purported holographic will), 41–42 (bank statement); 44 (excerpt of Elizarde's deposition—it is missing the reporter's certificate); 46–48, 50 (e-mails) (plaintiffs presumably meant to authenticate these e-mails via the deposition testimony.  In that testimony, Elizarde identifies her e-mail address as "tiuu@MTAonline.net," but she does not identify any e-mail address as belonging to Kerr, nor is she ever asked whether the copies of the attached e-mails are true and correct).

account is genuinely disputed.  Plaintiffs argue that their claims are not barred by NRS 111.797 because the Nevada Supreme Court has established a long line of precedent that "upholds a Testator's intent as close as possible,"[47] and they have offered evidence to show that Kerr intended to remove Elizarde from the account.  Plaintiffs also argue that NRS 111.797 does not apply when there is a fiduciary relationship, and whether there was a fiduciary relationship is disputed.[48]

NRS 111.797(2) states that "[a] right of survivorship arising from the express terms of the account, . . . [multi-party accounts,] or a POD designation may not be altered by a will."  NRS 111.783(c), exempts from this rule "[a] fiduciary or trust account in which the relationship is established other than by the terms of the account."  Though the Nevada Supreme Court has not had the opportunity to discuss the interplay between these statutes, I do not find that section 111.783's exemption applies here.  Section 111.797 explicitly refers to POD accounts, while section 111.783 applies only to fiduciary or trust accounts "in which the relationship is established *other than by the terms of the account*."[49]  The terms of Kerr's account clearly established that the account was held "In Trust For" Elizarde and Friedman, as co-beneficiaries, and was made payable to each upon Kerr's death.[50]  Because this relationship is established by the terms of the POD account, the exception in NRS 111.783 has no application, NRS 111.797 controls, and the designation of Elizarde and Friedman on the account could not be altered by Kerr's holographic will.

Kerr's alleged intent to remove Elizarde from the account is irrelevant because she failed to remove Elizarde from the account during her lifetime.  Under NRS 111.797, a bank must receive a signed written notice before the account holder's death to change the terms of the account.[51]  Even if I accept plaintiffs' sworn statements that Kerr told them that she intended to remove Elizarde from

---

[47] ECF 26 at 9 (citing *Starr v. Rousselet*, 877 P.2d 525 (Nev. 1994); *Byrd v. Lanahan*, 783 P.2d 426 (Nev. 1989); *Concannon v. Winship*, 581 P.2d 11 (Nev. 1978)).

[48] *Id.* at 13.

[49] NEV. REV. STAT. § 111.783(c) (emphasis added).

[50] ECF 1 at 3.

[51] NEV. REV. STAT. § 111.797(1).

the account (which suffer from serious hearsay problems), these affidavits are insufficient to create a genuine issue of *material* fact.  That Elizarde and Friedman were listed on the account as co-beneficiaries when Kerr died is undisputed.  Accordingly, Nevada law made Elizarde legally entitled to half of the proceeds from the account.  This legal entitlement proves fatal to plaintiffs' claims, all of which seek to circumvent NRS 111.797.

C. **Unjust Enrichment**

Under Nevada law, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another."[52]  A party is not liable for unjust enrichment "when there is an express, written contract, because no agreement can be implied when there is an express agreement."[53]  A claim for unjust enrichment is only available if there is no legal contract.[54]

Plaintiffs allege that Elizarde was unjustly enriched when she took half of the proceeds from the account and used it for her own benefit against the instructions left by Kerr in the holographic will.[55]  Even if I consider Kerr's purported holographic will (which has not been properly authenticated), plaintiffs' unjust-enrichment claim nonetheless fails.  The POD account is an express, written contract under which the bank agreed to disburse the funds per the terms of the account.  Because there is a legal contract entitling Elizade to half of the proceeds from the account, she was not unjustly enriched by claiming them.

Plaintiffs also theorize that Elizarde was unjustly enriched because she took money out of the account without acting as the administrator.[56]  But plaintiffs offer no evidence to show that Elizarde took any compensation from the estate for rendering services.  The only money plaintiffs allege Elizarde took was half of the balance of the bank account—money that she was entitled to receive

---

[52] *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

[53] *Id.*

[54] *Id.* (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

[55] ECF 1 at ¶ 5.

[56] ECF 24 at 8.

without performing any services at all. Accordingly, plaintiffs' claim for unjust enrichment fails as a matter of law under either theory.

### D. Breach of Fiduciary Duty

Under Nevada law, a "'fiduciary relation exists between two persons when one of them is under a duty to act for . . . the benefit of another upon matters within the scope of the relation.'"[57] Plaintiffs allege that Elizarde "intentionally refused to cooperate with the administration of [Kerr's] estate and denied the existence of any bank accounts" and "did not comply with any of [Kerr's] wishes and ignored and even breached her present duties as a fiduciary."[58]

Plaintiffs lack evidence that Elizarde owed Kerr's estate or Friedman a fiduciary duty or that she breached that duty. There is no evidence that Elizarde accepted her nomination as administrator of the estate or ever acted as administrator. In fact, the evidence shows that Elizarde promptly communicated her decision not to act as administrator and that a public administrator was appointed.[59] And plaintiffs offer no evidence that Elizarde made any disbursements of any assets from the estate (the bank account proceeds did not pass through the estate, *see* NRS 111.799), let alone any improper disbursements. Because no reasonable jury could find in plaintiffs' favor on their breach-of-fiduciary-duty claim, Elizarde is entitled to summary judgment on this claim, too.

### E. Civil Theft/False Pretenses and Embezzlement

Elizarde contends that plaintiffs' claim for civil theft and false pretenses under NRS 205.0832 and embezzlement under NRS 205.300 fail as a matter of law because she cannot be sued under these criminal statutes.[60] Plaintiffs respond that they cited to the criminal statutes in their complaint merely to "assist the court in illustrating the severity of [Elizarde's] actions" and that civil

---

[57] *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009) (quoting Restatement (Second) of Torts 874 cmt. A (1979)).

[58] ECF 1 at ¶¶ 33–34.

[59] ECF 22-3 at 2 (letter acknowledging that Elizarde declined Kerr's nomination to act as administrator and that the Clark County Public Administrator's Office would be handling Kerr's estate).

[60] ECF 22 at 8–9. Elizarde also points out that NRS 205.0832 does not provide for a civil penalty.

theft/false pretenses and embezzlement are intentional torts actionable under Nevada law.[61]

I construe plaintiffs' claim for "civil theft" as one for conversion. Under Nevada law, conversion is the wrongful exertion of control over personal property in derogation of another's rights or title in the property.[62] Plaintiffs lack evidence to show that Elizarde *wrongfully* exerted control over the personal property of the estate or Friedman. Because Elizarde is the rightful owner of half of the proceeds in the account under its express terms, she cannot be liable for conversion for receiving them.

To prevail on a claim for false pretenses under Nevada law, plaintiffs must show: (1) intent to defraud, (2) a false representation, (3) justifiable reliance on that representation, and (4) that the victim was defrauded.[63] A false representation "may be made expressly[ ]or by implication."[64] Plaintiffs allege that Elizarde "made representations to [Kerr] to cause reliance. These representations were false and were intended to cause [Kerr] to act in a manner that she would not have otherwise acted . . . ."[65] Though it is difficult to discern from the complaint, plaintiffs' theory appears to be that Elizarde induced Kerr to make her a co-beneficiary on the account by falsely promising to manage the account for the sole benefit of Freidman. But plaintiffs have offered no admissible evidence to support this theory. Plaintiffs have offered no admissible evidence to show that Elizarde made any false representation to Kerr, e.g., that she promised to distribute the account for Freidman's benefit, or that Kerr named her as a beneficiary on the account based on that representation. Because no reasonable jury could find in plaintiffs' favor on their false-pretenses claim, Elizarde is entitled to summary judgment.[66]

---

[61] ECF 26 at 15.

[62] *See Winchell v. Schiff*, 193 P.3d 946, 944 (Nev. 2008) (internal citations omitted).

[63] *Bright v. Sheriff, Washoe Cnty*, 521 P.2d 371, 372 (Nev. 1974).

[64] *Id.* at 373.

[65] ECF 1 at ¶ 40.

[66] ECF 24-1 at 3. In one affidavit, Friedman states that Kerr repeatedly told him that Elizarde assured her that, in the event Kerr became incapacitated or died, Elizarde would assist Friedman in

To prevail on an embezzlement claim under Nevada law, plaintiffs must show that "the defendant was a bailee of [ ] money . . . and converted it to [her] own use, with the intent to steal it or defraud the plaintiff[-owners]."[67] Plaintiffs' embezzlement claim fails as a matter of law because, as a co-beneficiary on the account, Elizarde was legally entitled to half of the proceeds. As the rightful owner of the funds she received, Elizarde cannot be liable for embezzlement here.

### F. Request for Equitable Lien and Constructive Trust

Plaintiffs' fifth claim for "declaration of an equitable lien and constructive trust," is not a separate cause of action but a prayer for relief. Because I grant summary judgment in Elizarde's favor on all of plaintiffs' substantive claims, this request for equitable relief also fails.[68]

### Conclusion

Accordingly, with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's Motion for Summary Judgment **[ECF 22] is GRANTED.**

IT IS FURTHER ORDERED that defendant's Motion to Strike **[ECF 31] is GRANTED** and defendant's Motion to Strike **[ECF 39] is DENIED** as moot.

---

managing his financial affairs. ECF 26-1 at 2. I cannot consider what Kerr purportedly told Friedman about Elizarde's allegedly false promise to assist Friedman because it is inadmissible hearsay that does not fit within any exception. Friedman also states that during the March 2013 prison visit Kerr informed both Friedman and Elizarde that Elizarde's name was on the account only as a convenience. ECF 26-1 at 3. Again, any statements purportedly made by Kerr during the March 2013 prison visit are inadmissible hearsay that do not fit within any exception.

[67] *Luckett v. United Title Co.*, 2015 WL 4073193, * 6 (D. Nev. July 2, 2015) (borrowing elements of civil embezzlement claim from Nevada's criminal embezzlement statute).

[68] Even if plaintiffs prevailed on their claims, I would be unable to order the requested relief because the property that plaintiffs seek to have encumbered is in Palmer, Alaska—well outside of this court's jurisdiction. Equitable relief would also be inappropriate: because money damages could make plaintiffs whole, the equitable remedy of constructive trust would be unnecessary. *See Davenport v. State Farm Mut. Auto Ins. Co.*, 404 P.2d 10, 13 (Nev. 1965).

1       The Clerk of Court is instructed to enter judgment in favor of defendant Tiiu Elizarde and against the plaintiffs on all claims and **CLOSE THIS CASE.**

      Dated this 21st day of January, 2016

                                          _____
                                          Jennifer A. Dorsey
                                          United States District Judge